UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 1:17-CR-00035-GNS-2

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

JONNY ALEXANDER REYES-MARTINEZ                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Objection (DN 414) to the Magistrate

Judge's Report and Recommendation (DN 398) as to Defendant's Motions to Suppress (DN 290,

291). The matter is ripe for adjudication.

## I.       STATEMENT OF FACTS

On May 30, 2017 Defendant Jonny Alexander Reyes-Martinez ("Reyes-Martinez") was

driving a vehicle on I-70 in Wabaunsee County, Kansas, accompanied by passenger Alex

Maldonado ("Maldonado"). (R. & R. 2, DN 398). Kansas State Police Trooper Ranieri observed

a crack in the front windshield of the car, in violation of Kan. Stat. Ann. § 8-1741, and initiated a

traffic stop. (R. & R. 2). He asked Reyes-Martinez and Maldonado for their identification and the

purpose of their trip, then returned to his cruiser to run an information check. (R. & R. 2, 5).

Trooper Ranieri then returned to the passenger side of the car and warned Reyes-Martinez and

Maldonado for the violation, returned their IDs, told them that he did not need anything else from

them, thanked them, and gave them a thumbs up. (Pl.'s Resp. Defs.' Mots. Suppress Ex. 1, at

11:25-11:35, DN 311 [hereinafter Traffic Stop Video]). Trooper Ranieri then asked whether there

were any "pistola" or "drogas" in the car. (Traffic Stop Video 11:36-11:40). Defendants indicated

there were not, to which Trooper Ranieri responded with a request to search the car by pointing to the back seat and pantomiming someone peering into the door window. (Traffic Stop Video 11:41-11:46). The occupants acceded to the request and Trooper Ranieri asked them to step out of the car while he searched it. (Traffic Stop Video 11:47-57). During the search he found ammunition hidden in powdered laundry detergent and a handgun in the air filter compartment. (R. & R. 2). At this point, Reyes-Martinez and Maldonado fled on foot and were later apprehended. (R. & R. 2).

Reyes-Martinez subsequently pled guilty to an illegal re-entry offense under federal law and was detained at Leavenworth Detention Center in Kansas. (R. & R. 3). Reyes-Martinez was later identified as a suspect in a string of robberies of Hispanic markets across Kentucky, Tennessee, and North Carolina, including a fatal shooting in Bowling Green, Kentucky. (R. & R. 3). After learning that Reyes-Martinez was housed in Kansas, Special Agent Laferte and detectives from the Bowling Green Police Department traveled to Kansas on September 27, 2017, to interview Reyes-Martinez about the robberies. (R. & R. 3). At the beginning of the interview, Detective Nade took the lead with the assistance of an interpreter. (Pl.'s Resp. Def.'s Mot. Suppress Ex. 5, at 1, DN 311-5 [hereinafter Interview Tr.]). After a few minutes of questions about Reyes-Martinez's background, Detective Nade sought a *Miranda* waiver in Spanish. (Interview Tr. 1-8; Pl.'s Resp. Def.'s Mots. Suppress Ex. 6, at 1, DN 311-6). Reyes-Martinez signed the waiver. (Pl.'s Resp. Def.'s Mots. Suppress Ex. 6, at 1). After roughly an hour and fifteen minutes, Detective Nade asked Reyes-Martinez about injuries that resulted in the course of the robberies. (Interview Tr. 70). Reyes-Martinez paused and said, "I would need to talk to a lawyer about that first . . . ." (Pl.'s Resp. Defs.' Mots. Suppress Ex. 2, at 90:34-90:45, DN 311-2 [hereinafter Interview Video]; Interview Tr. 70). Reyes-Martinez then agreed to look at

2

photographs and identify those depicted.  (Interview Tr. 71).  Afterwards, Detective Nade readdressed the issue of counsel and Reyes-Martinez consented to further questioning clarifying that if he did not want to answer a question he would not answer.  (Interview Tr. 82).  Throughout this interview, Reyes-Martinez made several incriminating statements about the Bowling Green robbery and shooting.  (R. & R. 3).

Reyes-Martinez was originally charged in a criminal complaint, then charged by indictment, and finally by superseding indictment.  (Compl., DN 1; Indictment, DN 33; Superseding Indictment, DN 133).  He is charged with interference with commerce by robbery, conspiracy to interfere with commerce by robbery, illegal possession of a firearm, conspiracy to carry or possess a firearm during a crime of violence, and murder through use of a firearm during a crime of violence, arising from the Bowling Green and other robberies

Reyes-Martinez has filed two motions to suppress.  In the first motion, he moves to suppress evidence discovered during the Kansas traffic stop.  (Def.'s Mot. Suppress, DN 291).  Reyes-Martinez further moves to suppress statements he made during custodial interrogation.  (Def.'s Mot. Suppress, DN 290).  Upon referral, the Magistrate Judge conducted an evidentiary hearing and a transcript of the hearing was filed, followed by post-hearing briefs.  (Suppression Hr'g Tr., DN 375; Pl.'s Br., DN 392, Def.'s Br., DN 397).  In the Report and Recommendation, the Magistrate Judge recommended that the motion to suppress the evidence from the traffic stop be denied, but that the motion to suppress statements from the custodial interrogation be granted in part and denied in part.  (R. & R., DN 398).  Defendant has objected to the Report and Recommendation.  (Def.'s Obj., DN 414).

## II.   DISCUSSION

In his objection, Reyes-Martinez marshals numerous arguments against the Report and Recommendation, some of which were not fully raised to the Magistrate Judge.  Objections to a report and recommendation are reviewed *de novo*.  28 U.S.C. § 636(b)(1).

### A.   Traffic Stop

Defendant objects to the Magistrate Judge's denial of his motion to suppress the evidence discovered through the traffic stop.  Defendant asserts that Trooper Ranieri terminated the stop upon the issuance of a warning, and that because he lacked probable cause or reasonable suspicion to extend the stop at that time, Trooper Ranieri's subsequent questions about guns and drugs, and request to search unconstitutionally prolonged the stop.  (Def.'s Obj. 4).  Defendant further argues his consent to search was not voluntarily given because of the language barrier between him and the police officer.  (Def.'s Obj. 4).

The stop began when Trooper Ranieri noticed a cracked windshield and initiated the traffic stop.  (R. & R. 2, DN 398).  The officer asked Defendant some preliminary questions and returned to his cruiser to run a warrant and criminal history check.  (R. & R. 5).  Upon completion of the information check, he returned to the car and told the occupants "that's all I needed" and gave them a thumbs up.  (Traffic Stop Video 11:25-11:35).  Defendant then grabbed the wheel as if he was about to leave.  (Suppression Hr'g Tr. 11:25-12:2, DN 375).  Simultaneously, Trooper Ranieri glanced around the car and asked whether they had any "pistolas" or "drogas", to which Reyes-Martinez responded no.  (R. & R. 5).  The officer then asked if he could search the car; Reyes-Martinez acquiesced.  (R. & R. 5).  These questions occurred immediately after the officer told Reyes-Martinez and Maldonado they were free to go.  (Traffic Stop Video 11:40-11:58).

Both parties acknowledged the initial traffic stop was valid.  (R. & R. 5).  The United States asserts that Trooper Ranieri obtained reasonable suspicion of criminal activity during the stop to justify extending it for additional questions and a request for consent, but Defendant claims neither reasonable suspicion nor probable cause existed after Trooper Ranieri gave the warning and therefore the extension of the stop was unconstitutional.  (R. & R. 5-6).

The Magistrate Judge relied on *Rodriguez v. United States*, 575 U.S. 348 (2015), for the proposition that the amount of time a driver may be detained is tied to the mission of the stop which focuses on traffic safety; the issuance of a warning or ticket; and ordinary inquiries like checking the driver's license, determining outstanding warrants, and inspecting automobile registration.  (R. & R. 5 (citing *Rodriguez*, 575 U.S. at 353-57)).  The Magistrate Judge recognized that detention may not persist longer than the mission, absent reasonable suspicion that there is additional criminal activity and held there was no reasonable suspicion to extend the stop here, but because the defendants gave consent to the search, the search did not impermissibly extend the duration of the traffic stop.  (R. & R. 5-6).

In *Rodriguez*, the Supreme Court held the question of whether a stop is unconstitutionally prolonged depends on whether the officer's conduct prolonged the stop beyond its mission. *Rodriguez*, 575 U.S. at 354.  The Sixth Circuit has interpreted *Rodriguez* to hold the seizure's mission is "to address the traffic violation that warranted the stop and attend to related safety concerns."  *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020) (internal citation omitted) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).  An officer can extend a traffic stop beyond this mission only through reasonable articulable suspicion, but the reasonable suspicion must arise **before** the officer seeks to prolong the stop.  *Rodriguez*, 575 U.S. at 355; *United States v. Howard*, 815 F. App'x 69, 76 (citing *Lott*, 954 F.3d at 923).  "'Authority for the seizure thus ends when

tasks tied to the traffic infraction are—or reasonably should have been—completed' unless 'reasonable suspicion of criminal activity justified detaining [the defendant] beyond completion of the traffic infraction investigation.'" *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (alteration in original) (citation omitted).

The Magistrate Judge found that "on completion of the information check, [Trooper Ranieri] returned Martinez' and Maldonado's documents to them, gave a verbal warning about the cracked windshield, and advised them they were free to go." (R. & R. 5). Both the United States and the Magistrate Judge acknowledged that the mission of the stop was then complete. (R & R 5; Pl.'s Resp. Defs.' Mot. Suppress 7). The Magistrate Judge further found, however, that "Trooper Ranieri immediately after advising Martinez that he was free to go, asked him if he could search that car, and if there were any guns or drugs in the car." (R. & R. 5). The Magistrate Judge recognized that an officer does not need reasonable suspicion to request a consensual search and that where an officer is granted permission, "execution of the search does not impermissibly extend the duration of the traffic stop" and held that is precisely what happened in this instance. (R. & R. 6 (citing *United States v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003))).

The Sixth Circuit has long held that a police officer does not violate the Fourth Amendment by asking a driver questions after the initial traffic stop has ended. *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (en banc) ("A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions."). This includes a request for consent to search the individual's vehicle. *United States v. Dunson*, 940 F.2d 989, 994 (6th Cir. 1991). "The test is not whether police expressly instruct a person not to leave, but whether the totality of the circumstances would convey to a reasonable person that

she is not free to leave." *United States v. Williams*, 615 F.3d 657, 665 (6th Cir. 2010) (citing *United States v. Drayton*, 536 U.S. 194, 201 (2002); *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). Several factors can evidence a seizure: "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.* at 662 (quoting *United States v. Campbell*, 486 F.3d 949, 954 (6th Cir. 2007)).

The Magistrate Judge here correctly noted that Trooper Ranieri was polite during the entire interaction. (R. & R. 8). He attempted to make himself understood to Reyes-Martinez, and followed up each request with "is that okay?" (Traffic Stop Video 11:40-11:58, DN 311-1). There was no physical show of force or language indicating compliance might be compelled. In *Branch* the court held there was no seizure when the officer told the defendant he could leave but asked if he would mind staying for a few questions. *Branch*, 537 F.3d at 588. By contrast, in *Richardson*, the court held the driver was seized when the officer gave the driver a ticket but then said "Okay, just hang out right here for me, okay?" *Richardson*, 385 F.2d at 630. In this instance, Trooper Ranieri gave Reyes-Martinez a thumbs up and said, "That's all I needed." (Traffic Stop Video 11:25-11:35). He then asked whether there were any drugs or guns, and when Reyes-Martinez and Maldonado shook their heads, Trooper Ranieri asked if he could search the car without any circumstances indicating that compliance with the request was required. (Traffic Stop Video 11:29-11:47). Accordingly, Reyes-Martinez was not seized while Trooper Ranieri asked questions about the presence of drugs and guns, nor was he seized when Trooper Ranieri subsequently requested consent to search the car. Because the detention had ended, Trooper Ranieri's questions, though prolonging the interaction beyond the stop, did not prolong the stop itself. This Court

overrules Defendant's objection to the Magistrate Judge's refusal to exclude evidence discovered during the traffic stop.

Defendant also objects to the Magistrate Judge's finding that his consent to search was voluntary and claims a language barrier existed which prevented a valid consent.  (Def.'s Obj. 3).  The Magistrate Judge recognized, however, that a language barrier existed during the traffic stop but that the police officer was able to communicate with Reyes-Martinez non-verbally.  (R. & R. 8-10).  "Non-verbal actions can constitute consent, but they must be clear and 'will not be found upon mere 'acquiescence to a claim of lawful authority.'"  *United States v. Pedicini*, 804 F. App'x 351, 354 (6th Cir. 2020) (quoting *United States v. Carter*, 378 F.3d 584, 589 (6th Cir. 2004)).  The Magistrate Judge accurately noted that "[t]he audio does not clearly capture the responses from either Martinez or Maldonado, but from their reactions it is evident that they agreed" and weighed the factors necessary to determine whether there was "more than the mere expression of acquiescence to the officer's authority."  (R. & R. 8).  This Court agrees with the Magistrate Judge's finding that Reyes-Martinez did consent non-verbally.  The dashcam footage shows that Reyes-Martinez and Maldonado leaned over to listen to Trooper Ranieri as he spoke to them and asked for consent, which corroborates Trooper Ranieri's testimony that he directed the request to both of them.  (Traffic Stop Video 11:25-11:58; Suppression Hr'g Tr. 12:15).  Maldonado clearly nodded his head and waved affirmatively.  (Traffic Stop Video 11:40-11:58).  Although Reyes-Martinez's exact response is unclear, Defendant does acknowledge he responded, just non-verbally. (Def.'s Obj. 3).  Trooper Ranieri testified that both Reyes-Martinez and Maldonado gave him the head nod indicating consent.  (Suppression Hr'g. Tr 12:20).  The Court agrees with the Magistrate Judge's determination that Reyes-Martinez knowingly and voluntarily consented to the search sufficiently to provide consent.  (R. & R. 10).

8

Defendant next claims that "it was not explained to [Reyes-Martinez] that he could refuse the officers [sic] request for the extended detention beyond the point of issuing a warning for a cracked windshield." (Def.'s Obj. 3). The Magistrate Judge construed this argument as a "challenge to consent on the basis that [Reyes-Martinez] did not speak English and did not have a sufficient understanding of the U.S. legal system to make his consent free and voluntary." (R. & R. 8). As the U.S. Supreme Court has recognized, "knowledge of a right to refuse is not a prerequisite of a voluntary consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 234 (1973). "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Id.* at 227. It would be "to unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). Ultimately, the Magistrate Judge considered the fact that Reyes-Martinez "had no education in United States law" and correctly found the consent was voluntary in this instance. (R. & R. 8).

Accordingly, this Court adopts the Magistrate Judge's findings of facts and law and finds Reyes-Martinez's consent was voluntary. Defendant's objection to the admissibility of the evidence seized during his traffic stop is overruled.

### B.   Violation of Sixth Amendment Right to Counsel

Reyes-Martinez contends that his interrogation on September 27, 2017, occurred without the consent of counsel representing him on pending federal charges and must be suppressed under the Fifth Amendment and Sixth Amendment. (Def.'s Obj. 2, 5). "The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

Counsel for his defence.'" *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (alteration in original).

In explaining the application of this constitutional right, the Supreme Court has stated:

> The Sixth Amendment right, however, is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced that is, "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

*Id.* (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984))*.*  As the Supreme Court has also noted:

> "The police have an interest . . . in investigating new or additional crimes [after an individual is formally charged with one crime].  . . . [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities . . . ."

*Maine v. Moulton*, 474 U.S. 159, 179-80 (1985).

Reyes-Martinez pleaded guilty with assistance of counsel to an illegal re-entry offense before his interrogation.  (R. & R. 3).  He was interrogated on September 27, 2017, regarding the Bowling Green robbery but was not formally charged under a criminal complaint until October 18, 2017.  Therefore, his Sixth Amendment right to counsel had not yet attached for the robbery offenses.  "The mere fact that the government is aware that a suspect has an attorney . . . does not unambiguously assert the suspect's right to deal exclusively with the police through counsel during custodial interrogation." *United States v. Suarez*, 263 F.3d 468, 483 (6th Cir. 2001) (citing *McNeil*, 501 U.S. at 177-82).  Accordingly, no waiver was required for the September 27 interview because Reyes-Martinez's Sixth Amendment right to counsel was not "invoked once for all future prosecutions" but rather attached only later, once the robbery prosecution began the following month. *McNeil*, 501 U.S. at 175.

Furthermore, when detectives began interrogating Reyes-Martinez on September 27, 2017, because his assertion of his Sixth Amendment right to counsel for the robberies had not yet attached, it was not unconstitutional to seek a waiver of his Fifth Amendment *Miranda* rights without counsel present.

## C.   <u>Custodial Interrogation</u>

Defendant next objects that law enforcement officers violated his *Miranda* rights during the custodial interrogation on September 27, 2018.

### 1.   **"Miranda-*in-the-Middle***

First, Defendant proposes that any statements made before he was advised of his *Miranda* rights must be suppressed.  (Def.'s Obj. 5).  The Magistrate Judge agreed in the Report and Recommendation that "the pre-warning statements are 'presumed compelled' and must be excluded from trial." (R. & R. 12).

Reyes-Martinez then reiterates that providing a subsequent *Miranda* warning did not remedy the violation because of the "coercive nature of the initial [engagement] to coax the continuing cooperation by an individual—a basic psychology 101 manipulative tactic quite familiar to the FBI to lessen the impact of the delayed *Miranda* warning negating the any 'voluntary waiver.'"  (Def.'s Obj. 6).  Thus, Defendant claims that statements made after being advised of his *Miranda* rights must be suppressed because the subsequent warnings were "ineffective in preparing the suspect for successive interrogation, close in time and similar in content." (Def.'s Obj. 5).  The Magistrate Judge held that the standard for judging a "*Miranda*-in-the-middle" was articulated in plurality decision in *Missouri v. Seibert*, 542 U.S. 600 (2004), and Justice Kennedy's concurrence.  (R. & R. 12-15).  The factors identified in *Seibert* are:

> the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting

of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Siebert*, 542 U.S. at 615.  Applying the plurality's five factors, and Justice Kennedy's "deliberate two-step strategy", the Magistrate Judge held that the detectives did not engage in an impermissible "*Miranda*-in-the-middle" warning, and that because Reyes-Martinez was adequately warned, he voluntarily waived his *Miranda* rights.  (R. & R. 13-15).  This Court agrees.  The Sixth Circuit has continued to apply both the *Seibert*'s plurality decision, and Justice Kennedy's concurrence when the outcome would not change.  *See United States v. Wooten*, 602 F. App'x 267, 272 (6th Cir. 2015); *see also Mitchell v. MacLaren*, 933 F.3d 526, 537 (6th Cir. 2019).  The Magistrate Judge found the third, fourth, and fifth factors weighed in favor of suppression, but that Detective Nade did not conduct a deliberate two-step strategy.  (R. & R. 14-15).  This Court agrees.

Regarding the *Seibert* factors, the third factor—"the timing and setting of the first and second interrogations"—looks for a break in time between the first and second interrogation. *United States v. Ray*, 690 F. App'x 366, 374 (6th Cir. 2017).  The Magistrate Judge correctly found that immediately after Reyes-Martinez was advised of his rights, the questioning resumed which weighs in favor of suppression.  (R. & R. 14); *see United States v. Pacheco-Lopez*, 531 F.3d 420, 427 (6th Cir. 2008).  The fourth *Seibert* factor — "the continuity of police personnel"—looks to whether there was practical continuity of personnel during the first and second interrogation.  *Ray*, 690 F. App'x at 376 (finding that all officers involved worked for the same department, formed the same task force, and presumably had knowledge of the unwarned statements).  The Magistrate Judge noted that there was absolute continuity of personnel because the same official continued questioning with the same officers in the room.  (R. & R. 14).  Finally, the fifth factor—"the degree to which the interrogators' questions treated the second round as continuous with the first"—looks

12

to whether the first and second interrogation seemed part of one sequence. *Ray*, 690 F. App'x at 377. The Magistrate Judge determined that because the initial questions were biographical in nature and that some of the post-*Miranda* warning questions were similarly biographical, this factor also weighed in favor of suppression.[1] (R. & R. 14).

The Magistrate Judge found that the first two *Siebert* factors weighed heavily against suppression. The first *Siebert* factor—"the completeness and detail of the first round of interrogation"—looks to whether officers asked questions necessary to "make an arrest, tailor their post-*Miranda* interrogation, and secure a conviction." *Ray*, 690 F. App'x at 373 (citations omitted). As noted by the Magistrate Judge, the introductory questions were unrelated to the crimes under investigation, the initial interrogation lasted roughly fifteen minutes, and Reyes-Martinez was asked only about his background. (R. & R. 14; Interview Tr. 1-8; Interview Video 00:00-15:07). Where biographical inquiry was coupled with a question about how the defendant arrived at a house involved with drug trafficking, the court in *Pacheco-Lopez* held the first factor was satisfied, but such is not the case here. *Pacheco-Lopez*, 531 F.3d at 424. The interviewing officers did not ask "all questions they needed to make an arrest", nor did they ask questions

---

[1] Arguably, even this factor more appropriately weighed *against* suppression. For example, in *Ray* the court found this factor weighed in favor of suppression when officers asked only ten follow up questions after the first un-warned interrogation, and where several questions were derivative of the earlier admissions, such that the officers had "very little work to do at the post-*Miranda* interrogation because they were just following up on Ray's prior admissions." *Ray*, 690 F. App'x at 376. The court found this warning did not "effectively advise [the defendant] that he had a real choice about giving an admissible statement because the unwarned and warned interrogations blended into one continuum." *Id.* The same is not true here. Officers were not following up on any prior admissions regarding the crime committed. The detectives here did not have "very little work to do at the post-*Miranda* interrogation." Fifteen minutes of the roughly two-and-a-half hour interrogation occurred before the *Miranda* warning and essentially consisted of questions regarding Defendant's background. (Interview Tr. 1-8).

necessary to "tailor their post-*Miranda* interrogation, and secure a conviction." *Ray*, 690 F. App'x at 373.

The second *Seibert* factor—"the overlapping content of the two statements"—examines whether there is substantial overlap between the first and second interrogation. *Id*. This overlap, however, cannot be "largely inconsequential and only marginally inculpatory." *United States v. Wooten*, 602 F. App'x 267, 273 (6th Cir. 2015). Unlike where the new questions were simply "the next logical [step] based on the earlier statements", the overlapping content from the pre-*Miranda* questioning was merely biographical and did not pertain to criminal conduct. *Ray*, 690 F. App'x at 373. The conversation continued for two hours after the *Miranda* warning, transitioning from Reyes-Martinez's background to the actual criminal investigation. The pre- and post-*Miranda* questions here did not substantially overlap each other.

After weighing each factor, the Magistrate Judge concluded that the *Seibert* test does not require suppression of the post-*Miranda* statements. (R. & R. 14). The central inquiry is whether "it would be reasonable to find that in [this] circumstance[ ] the warnings could function 'effectively' as *Miranda* requires . . . [f]or unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with Miranda, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." *United States v. Gasaway*, No. 3:19-CR-27-RGJ, 2019 WL 5846889, at *5 (W.D. Ky. Nov. 7, 2019) (internal quotation marks omitted) (quoting *Seibert*, 542 U.S. at 611-12). Nothing about the conversation prior to the *Miranda* warnings indicates that Reyes-Martinez was unable to make an informed choice about whether to waive his *Miranda* rights.

14

The Magistrate Judge also analyzed the interrogation under Justice Kennedy's concurrence in *Seibert* whether "the police employed a deliberate two-step interrogation technique specifically designed to undermine the effectiveness of *Miranda* warnings." (R. & R. 13-15). As a sister court has explained:

> Justice Kennedy's concurrence in *Seibert* requires two steps. First, it directs the court to determine whether there was a deliberate violation of Miranda. Second, if there was no deliberate violation, the court . . . decides whether statements made after a *Miranda* warning are admissible based on whether they were knowingly and voluntarily made.

*United States v. Woodruff*, 830 F. Supp. 2d 390, 407 (W.D. Tenn. 2011) (citation omitted). Justice Kennedy held that a deliberate technique withholds *Miranda* warning to "obscure both the practical and legal significance of the admonition when finally given." *Seibert*, 542 U.S. at 620 (Kennedy, J., concurring). "The strategy is based on an assumption that *Miranda* warnings will tend to mean less when recited midinterrogation, after inculpatory statements have already been obtained." *Id.* The initial interrogation here did not include inculpatory statements; in fact, nothing of substance preceded the *Miranda* warning. Justice Kennedy recognized a deliberate technique would allow an officer to rely on "defendant's prewarning statements to obtain the postwarnings statements used against her at trial." *Id.* at 621. In this instance, Reyes-Martinez's pre-*Miranda* statements did not address any crimes under investigation such that the second interrogation could simply rely on any previous answers, and there is no indication that the detectives engaged in a deliberate technique to violate his rights.

The Magistrate Judge correctly held that Reyes-Martinez was adequately warned and voluntarily waived his right to counsel when officers eventually provided a *Miranda* warning. (R. & R. 15). This Court overrules Defendant's objection to the Magistrate Judge's ruling that Defendant was not subjected to an impermissible "*Miranda*-in-the-middle" interrogation.

15

## 2. *Conditional Invocation of the Right to Counsel*

Finally, Reyes-Martinez argues that he invoked his right to counsel during interrogation and that any subsequent questions violated his *Miranda* rights.  (Def.'s Obj. 6).  "Law enforcement officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation."  *Davis v. United States*, 512 U.S. 452, 454 (1994).  The suspect must "make some affirmative 'statement' or 'request' whose ordinary meaning shows his desire to deal with the police through counsel."  *United States v. Suarez*, 263 F.3d 468, 483 (6th Cir. 2001) (citations omitted); *see also Edwards v. Arizona*, 451 U.S. 477, 484 (1981) (holding that the request must show the suspect's "desire to deal with the police *only* through counsel . . . ." (emphasis added)).  "A suspect need not 'speak with the discrimination of an Oxford don,' but must be unambiguous.  This means that a suspect 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'"  *Tolliver v. Sheets*, 594 F.3d 900, 922 (6th Cir. 2010) (internal citation omitted) (quoting *Davis*, 512 U.S. at 459).  Invoking the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*."  *McNeil*, 501 U.S. 178.  Once a suspect indicates a desire to deal with police only through counsel, a suspect cannot be subject to further interrogation.  *Edwards*, 451 U.S. at 484-85.  This rule is intended to "prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights."  *Michigan v. Harvey*, 494 U.S. 344, 350 (1990) (citing *Oregon v. Bradshaw*, 462 U.S. 1039 (1983)).

16

Defendant cites the portion of the interrogation that occurs over an hour into the interrogation, as follows:[2]

| | |
|---|---|
| [Detective]: | . . . Uh, did anybody ever get hurt during any of these robberies? |

. . .

| | |
|---|---|
| [Reyes-Martinez]: | That one I am not ask—not answering it.  That question, I cannot—I cannot answer it. |

. . .

| | |
|---|---|
| [Detective]: | Okay.  Um, because you don't know? |

. . .

| | |
|---|---|
| [Detective]: | What about the people that you were with?  Was anybody . . . that you were with—ever got hurt around you? |

. . .

| | |
|---|---|
| [Reyes-Martinez]: | I would need to talk to a lawyer about that first so that— |

. . .

| | |
|---|---|
| [Detective]: | Okay.  Um, I would like to continue talking to you.  Um, do you want to continue talking to me?  Or do you want to talk to a lawyer? |

(Interview Tr. 70).[3]

Reyes-Martinez contends that this passage establishes that he "unequivocally invoked his right to counsel and told the interrogators that he wanted to talk to a lawyer before proceeding any further.  [And that] [r]ather than stop all questioning immediately and contacting his then existing counsel or obtain counsel for defendant as he had requested, the interrogator continued talking to the defendant . . . ."  (Def.'s Obj. 7).  Nevertheless, the questioning continued as follows:

---

[2] The interview transcript includes an English translation of any statements made by the interpreter translating the questions and answers into Spanish.  The interpreter's redundant statements have been omitted from the quoted portions of this transcript.  In addition, Reyes-Martinez's statements in Spanish appear in English.

[3] Defendant had inquired about his right to make a similar refusal earlier in the interrogation when he said in response to a question about who would chose the stores to rob, "And if I don't want to answer that question?", to which the officer said, "Uh, that's fine, if you don't want to answer." (Interview Tr. 54).

| | |
|---|---|
| [Reyes-Martinez]: | And what happens if I ask for an attorney? |
| . . . | |
| [Detective]: | Uh, then we'll let you--we will let you talk to an attorney. |
| . . . | |
| [Reyes-Martinez]: | Okay |
| [Detective]: | But I'd like to, uh, show you some pictures and ask you if you know them. |
| . . . | |
| [Reyes-Martinez]: | Okay. |
| [Detective]: | Okay. |
| [Reyes-Martinez]: | Uh-huh. |
| [Detective]: | You're okay with talking to me, um, without an attorney? |
| . . . | |
| [Reyes-Martinez]: | No.  . . . But I can look at the pictures and tell you if I know them. |
| . . . | |
| [Detective]: | Okay.  Um.  I'd like to show you the pictures, um, so you'd like to--me to show you the pictures and you can tell me if you know them? |
| . . . | |
| [Reyes-Martinez]: | Yes. |
| [Detective]: | You're okay with continuing— |
| [Reyes-Martinez]: | [voice overlap] It's fine. |
| [Detective]: | —with that by yourself? |
| [Reyes-Martinez]: | Uh-huh. |
| . . . | |
| [Reyes-Martinez]: | Yes. |
| . . . | |
| [Reyes-Martinez]: | Okay. |

(Interview Tr. 70-71).   Following a discussion regarding the photographs, the questioning

continued:

18

| [Detective]: | Um, now like we talked about earlier, um, I'd like to tell you about some more things . . . and uh, but I need to make sure that you're willing to conti—continue to talk to me. |
|---|---|

. . .

| [Detective]: | And, uh, that's completely up to you, but, uh, like I shared with you earlier, I would like to hear your side of the story. . . . Uh, so would you like to continue to talk to me and hear what I have to say? |
|---|---|

. . .

| [Reyes-Martinez]: | All right. |
|---|---|

. . .

| [Detective]: | Okay.  And you're okay with doing that without an attorney? |
|---|---|

. . .

| [Reyes-Martinez]: | But the question that I don't want to answer, I don't answer. |
|---|---|

. . .

| [Detective]: | Right.  If you don't want to answer it just tell me. |
|---|---|

(Interview Tr. 82).

The Magistrate Judge found that Defendant made a conditional invocation when he invoked his right to an attorney with respect to answering questions about whether anyone was injured in robberies, but not for further custodial interrogation.  (R. & R. 20).  Furthermore, although Defendant did attempt a conditional invocation of his right to counsel, he subsequently followed it up with another, broader, conditional invocation regarding questions about photo identification.  (R. & R. 20).  The Magistrate Judge found these two conditional invocations created an ambiguous request for counsel, such that Detective Nade was allowed to follow up, in order to seek clarification on the scope of Defendant's invocation.  (R. & R. 20).  Defendant now argues that his initial invocation was unequivocal, not conditional, such that all questioning should have ceased.  (Def.'s Obj. 6-7).  If the first invocation was an unequivocal invocation of his right to counsel, Defendant's statement regarding photographs would be impermissible.  The rule is clear

that "*postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois*, 469 U.S. 91, 100 (1984). However, this Court holds the Magistrate Judge correctly determined that Defendant's second conditional invocation created an ambiguity sufficient to allow the Detective Nade to clarify the scope and ask further questions.

The Supreme Court has held that an accused may invoke his right to counsel for some purposes without invoking it for all purposes. *United States v. Conner*, 946 F.2d 896, 1991 WL 213756, at *2 (6th Cir. 1991) (citing *Connecticut v. Barrett*, 479 U.S. 523 (1987)). For example, in *Conner*, the Sixth Circuit held that where the defendant invoked his right to counsel regarding discussion of narcotics, it did not violate his rights to discuss gambling operations, property acquisitions, nor other unrelated matters. *Id.*

In this instance, Reyes-Martinez spent over one hour discussing the criminal investigation, answering multiple questions about the robberies, and even indicated that he knew what to do when he did not want to answer a question. (Interview Tr. 35-72). His claimed invocation of the right to counsel was in response to a question about injuries during any of the robberies, which Reyes-Martinez said, "I would have to talk to a lawyer *about that* first so that—." (Interview Tr. 70 (emphasis added)). Thus, Reyes-Martinez did not unequivocally demand an attorney but instead specifically limited the request to questions about injuries. Absent such qualification, Detective Nade would have been constrained to stop the interrogation; however, a broad interpretation beyond the condition "is only required when the defendant's words, understood as ordinary people would understand them, are ambiguous. [But where the defendant] made clear his intentions, and they were honored by police" the defendant is not presumed to have invoked his right for purposes, and additional questions are permissible. *Barrett*, 479 U.S. at 529. Reyes-

20

Martinez clearly conditioned his request for an attorney for questioning about injuries during the robberies.

This alone does not resolve the issue, because as Defendant points out, Detective Nade followed Reyes-Martinez's conditional request for counsel with another question: "Okay. Um, I would like to continue talking to you. Um, do you want to continue talking to me? Or do you want to talk to a lawyer?" (Interview Tr. 70). As stated before, an officer may not request clarifying questions about whether the suspect wants counsel once the suspect has unequivocally invoked his right. *Davis*, 512 U.S. at 461-62.

In *Bush v. Warden, Southern Ohio Correction Facility*, 573 F. App'x 503 (6th Cir. 2014), the court held that although the defendant made a conditional request for an attorney, it did not "rise to the level of triggering protection of *Edwards*", but "[b]ecause officers honored [defendant's] clear intention not to discuss certain matters without the presence of an attorney, their continued interrogation . . . about other matters did not violate his Fifth amendment rights." *Id*. at 512 (citations omitted). Likewise, in *United States v. Hawkins*, 426 F. Supp. 3d 447 (E.D. Mich. 2019), when a suspect did not "unequivocally invoke his right to counsel for all purposes" the court found the invocation was ambiguous but still protected certain statements because he nevertheless "did convey, unambiguously and unequivocally, that he did not want to answer questions about where he got the rifle without counsel present." *Id*. at 456-57. Accordingly, a conditional invocation of a defendant's desire to have counsel present and does not preclude further discussion of unrelated matters. Accordingly, when Defendant conditionally invoked his right to counsel, it was not necessary to stop *all* questioning immediately.

Reyes-Martinez further claims that he reiterated his demand for an attorney when he asked Detective Nade: "And what happens if I ask for an attorney?" (Def.'s Obj. 7; Interview Tr. 70).

Generally, however, a question regarding the presence of an attorney is not an unequivocal invocation. *See United States v. Delaney*, 443 F. App'x 122, 130 (6th Cir. 2011) ("I think I should talk to a lawyer, what do you think?"); *United States v. Mays*, 683 F. App'x 427, 433 (6th Cir. 2017) ("I really should have a lawyer, huh?"). Instead, surrounding circumstances accompanying the question must indicate it as unequivocal. *See Abela v. Martin*, 380 F.3d 915, 926-27 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010) (holding that "maybe I should talk to an attorney by the name of William Evans" was unequivocal because the specific reference to an attorney and because the suspect handed an officer the attorney's business card); *cf. Smith*, 469 U.S. at 97 (holding statement "Uh, yeah, I'd like to do that" upon learning of the right to counsel was unambiguous). In this exchange, Reyes-Martinez asked what would happen if he asked for an attorney, Detective Nade responded "We'll let you talk to an attorney" to which Defendant replied "Okay." This clearly was not an unequivocal invocation of Reyes' Martinez's right to counsel. *See Abela*, 380 F.3d at 926 (explaining that courts can consider the "surrounding circumstances" of a request, including the response of the officers, to "confirm that a reasonable officer would understand [the suspect's] statement to be a clear request for counsel"). Accordingly, this Court overrules Defendant's final objection to the Report and Recommendation refusing to exclude statements he made during the custodial interrogation.

### III.   CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** as follows:

1.      Defendant's Objection (DN 414) to the Report and Recommendation (DN 398) is **OVERRULED**, and the Magistrate Judge's Report and Recommendation is **ADOPTED**.

2.      Defendant's Motion to Suppress (DN 290) is **GRANTED IN PART** and **DENIED IN PART**. Statements that Defendant made during the custodial interrogation prior to being

advised of his *Miranda* rights are suppressed.  Statements made by Defendant subsequent to being

advised of his *Miranda* rights would be admissible at trial.

     3.     Defendant's Motion to Suppress (DN 291) is **DENIED**.


Greg N. Stivers, Chief Judge

United States District Court

November 19, 2020

cc:    counsel of record